UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

NORA HARRIS                                                                                              PLAINTIFF

v.                                                                                              NO. 3:20-CV-216-CRS

KILOLO KIJAKAZI,
Acting Commissioner of Social Security[1]                                              DEFENDANT

### MEMORANDUM OPINION

This matter is before the court for consideration of the Report and Recommendation (DN 23) of the United States Magistrate Judge in this action seeking judicial review pursuant to 42 U.S.C. § 405(g) of the denial by the Commissioner of Social Security of plaintiff Nora Harris' claim for Supplemental Security Income ("SSI").

The matter was referred to the United States Magistrate Judge for findings and recommendation. The United States Magistrate Judge conducted a review of the final decision of the Commissioner (DN 15-2, PageID #82-93), and concluded that substantial evidence supported the findings of Administrative Law Judge ("ALJ") Steven Collins and that ALJ Collins' decision comported with the applicable regulations. The Magistrate Judge recommended that the Commissioner's decision be affirmed. DN 23. Harris has filed objections to the Magistrate Judge's report which we address below, conducting a de novo review of those portions of the report to which the she objects, in accordance with 28 U.S.C. § 636(b)(1)(C).

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rules of Civil Procedure 25(d), Kilolo Kijakazi is substituted for Andrew Saul as Defendant in this case.

1.  Standard of Review

The Court conducts a de novo review of the portions of the Magistrate Judge's Report and Recommendation to which a party has filed a timely and specific written objection. Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1). A district court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1)(C). Only those objections that are specific; that is, that "pinpoint those portions of the magistrate's report that the district court must specifically consider," are entitled to de novo review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505, 509 (6th Cir. 1991). "'[B]are disagreement with the conclusions reached by the Magistrate Judge, without any effort to identify any specific errors in the Magistrate Judge's analysis that, if corrected, might warrant a different outcome, is tantamount to an outright failure to lodge objections to the R & R.' *Depweg v. Comm'r of Soc. Sec.*, No. 14-11705, 2015 WL 5014361, at *1 (E.D. Mich. Aug. 24, 2015) (citing *Howard v. Secretary of Health & Human Services,* 932 F.2d 505, 509 (6th Cir. 1991))." *Arroyo v. Comm'r of Soc. Sec.*, No. 14-14358, 2016 WL 424939, at *3 (E.D. Mich. Feb. 4, 2016).

In reviewing the ALJ's findings, the Court must determine whether those findings are supported by substantial evidence and made pursuant to proper legal standards and nothing more. *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); 42 U.S.C. § 405(h). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008)(internal quotation marks omitted). The Court may not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)(internal citations omitted).

2. Analysis

Harris was forty-four years old at the time she protectively filed her application for Supplemental Security Income benefits. She lives independently, occupying the second floor of a house and has a high school education. Hearing Transcript, DN 15-2, PageID #s 92, 120-21.

Harris alleged that she became disabled on January 1, 2012. She protectively filed an application for Supplemental Security Income on June 22, 2017. Her claim for benefits was initially denied on September 25, 2017 and upon reconsideration on January 22, 2018. Harris requested and was given a hearing before the ALJ on September 9, 2019 at which time she appeared, represented by counsel, and gave testimony. Testimony was also taken from an impartial vocational expert who appeared at the hearing. On November 27, 2019, the ALJ issued a written opinion evaluating the evidence under the required 5-step process and concluding that "[b]ased on the application for supplemental security income protectively filed on June 22, 2017, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act." DN 15-2, PageID #93. The Appeals Council denied Harris' request for review on February 3, 2020, rendering the ALJ's decision the final decision of the Commissioner subject to review by this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

The Magistrate Judge's report thoroughly recounts the ALJ's analysis in reaching his decision that Harris is not disabled as defined by the Social Security Act. In this opinion, we focus on specific errors allegedly made by the Magistrate Judge in her review of ALJ Collins' decision.

The Social Security Act authorizes payments of SSI to persons with disabilities. *See* 42 U.S.C. §§ 1381-1383f. An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a) (2020).

The ALJ found that Harris has the severe impairments of "syncope; arthralgia; degenerative disc disease; obesity; cubital tunnel syndrome; asthma; bipolar schizoaffective disorder; generalized anxiety disorder; major depressive disorder; and attention deficit disorder (20 CFR 416.920(c))" and that '[t]he above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28." DN 15-2, PageID # 84. Harris does not object to this finding. Her allegations of error in the ALJ's decision are directed to the ALJ's evaluation of these severe impairments in determining her RFC and additionally to the Step Five analysis that flowed from that RFC finding.

The ALJ concluded that

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except no climbing of ladders, ropes or scaffolds. She should have no exposure to hazards. She should avoid concentrated exposure to pulmonary irritants (fumes, odors, dust, gas and por ventilation). She could frequently perform handling and fingering. The claimant is capable of simple, routine repetitive (minimal variation in job duties day to day) tasks. She is capable of simple, work-related decisions. There should be few, if any, workplace changes. The work should have no fast-paced production requirements. She can perform these type of tasks over two-hour segments in an eight-hour work day. She could have occasional contact with supervisors and workers but no contact with the general public.

DN 15-2, PageID # 87.

In determining Harris' Residual Functional Capacity, the ALJ was required to base his findings on a review of the record as a whole, including Harris' credible testimony and the opinions from Harris' medical sources. 20 CFR §§ 404.1545.(a)(1), 416.945(a)(1).

The Magistrate Judge noted that "[g]enerally, the ALJ relied on Harris's hearing testimony, condition during the hearing, daily activities, the medical evidence of record from her treatment

-4-

providers, multiple consultative examinations in the record, and the opinions of the state agency physicians in reaching his determination. (*Id.* at 19-25.)." DN 23, p. 6, PageID #1880.

The Magistrate Judge addressed Harris' contentions that the ALJ erred in determining her Residual Functional Capacity ("RFC") by failing to provide a sufficient narrative discussion of her capability to perform sustained work, disregarding evidence of greater limitation, failing to base determination on substantial evidence, and insufficiently addressing medical opinion evidence. DN 24.  She contends in her objections that the Magistrate Judge's report is deficient because he accepted the ALJ's decision as being based upon a review of the record as a whole and upon substantial evidence sufficiently explained.  Harris reiterates the same arguments made in her Fact and Law Summary and they were fully addressed by the Magistrate Judge.  To the extent she articulates the same evidence and proposed analysis and alleges error only insofar as the Magistrate Judge did not agree with her challenges to the ALJ's decision, Harris has essentially failed to lodge objections to the Magistrate Judge's report.

    A.  Use of a Cane

The Magistrate Judge found ALJ Collins' determination that Harris' asserted need for a cane was unpersuasive to be supported by substantial evidence and in accordance with the regulations.  He first discussed the evidence in the record relied upon by the ALJ:

> [T]he ALJ observed that Harris ambulated with a cane during her hearing. (R. at 20.) He also explained that, based on his review of the medical records, Harris "apparently began using a cane for [*sic*] recently; however, it appears to be used only for balance and because she complained of her leg 'going out.' " (*Id.* at 21.) He noted that she did not demonstrate antalgic gait and that there was "some suggestion" in the medical records that Harris did "not require the cane consistently." (*Id.*) The ALJ cited that while Harris presented with a cane during a…mental consultative examination with Gary Bachara, Ph.D., ("Bachara") in May 2016, she did not present with one a month later at her physical consultative examination with Joseph J. Umesi, M.D. (*Id.* at 23, 632, 635-39.) He also emphasized that an x-ray of Harris's "lumbar spine showed only minimal to mild

spondylosis at the L4-5 and L5-S1 levels" and x-rays of her right and left hip were negative. (*Id.* at 21.) He noted that Harris was referred to physical therapy. (*Id.*) The ALJ concluded that he did not find Harris's allegations of a need for a cane to be persuasive. (*Id.*) He did not include any limitations related to use of a cane or her ability to stand or walk in his determination of Harris's RFC.

DN 23, p. 7, PageID #1881.  The Magistrate Judge found that

the records appear consistent with the ALJ's characterization and summary of them. Harris frequently presented with normal gait and stance between May 23, 2017, and January 4, 2019. (*Id.* at 670 (5/23/2017), 678 (6/20/2017), 682 (6/26/2017), 687/836 (7/17/2017), 745 (8/21/2017), 762 (9/14/2017), 756/819 (10/24/2017), 1157 (3/9/2018), 1143 (12/4/2018), 1129 (1/4/2019).) Then, during a March 22, 2019, visit at Family Health Centers with Teresa Casey, APRN, ("Casey"), Harris reported weakness in her legs and her legs giving out randomly. (*Id.* at 1116.) She indicated that she wanted to know why *and requested a cane* to keep her from falling. (*Id.*) The record from this visit reflects an instruction to "[p]lease obtain cane for pt" and states, "[G]iven a cane to assist ambulation." (*Id.* at 1113, 1116.)

DN 23, p. 8, PageID #1882. (emphasis added).  Additionally, the records indicate:

At her July 5, 2019, visit with Casey, Casey noted that Harris's x-rays were negative and referred her to physical therapy for her leg and hip pain and difficulty walking. (*Id.* at 1093.) Casey's notes stated, "I do not know why your legs hurt because the x-rays are negative." (*Id.*) When Casey reviewed the x-ray results with Harris, Harris indicated that she felt the x-rays "cannot be correct because she has pain," and Harris continued to report leg pain and her legs giving out when walking. (*Id.* at 1095-96.) Casey documented normal gait and noted that despite using a cane for ambulation, Harris was able to get on and off the exam table without assistance, her gait was not antalgic, and she had no other gait disturbance during her visit. (*Id.* at 1096.)

DN 23, p. 9, PageID #1883.  The Magistrate Judge then concluded:

Though Harris argued the ALJ ignored the "prescribed cane" and that the "treating doctor found abnormal gait and determined she needed a cane," the undersigned finds this to be an incorrect summation of the records. (DN 17, at PageID # 1831.) Harris's treating nurse practitioner, Casey, provided Harris a cane at Harris's request and subsequent records noted that Harris used it, not that one was prescribed or needed. Harris pointed to no other records supporting that a medical provider indicated that Harris required the use of a cane to ambulate or that any provider assessed functional limitations related to use of a cane, walking, or sitting. The records also demonstrate negative x-rays and that at numerous visits, including one shortly before Harris's hearing with the ALJ, Harris demonstrated normal gait. Given these records, the undersigned finds that the ALJ's analysis of Harris's use

>of a cane and his omission of any functional limitations related to the same from his RFC finding is supported by substantial evidence.

DN 23, p. 9, PageID # 1883.

Harris reiterates that there is "uncontroverted medical opinion" that Harris' leg gives out and that the cane was not given simply because she requested it. DN 24, p. 3, PageID #1905. This Court agrees with the Magistrate Judge that Harris has offered "an incorrect summation of the records." *Id.*. The summation is incorrect because Harris extrapolates from the Casey cane order more than is there. Harris requested a cane and APRN Casey stated in the Patient visit note under Plan – Low back pain: "Please obtain cane for pt – I have done this during exam process." DN 15-14, PageID #1195. Further on in the report, Casey states under the heading of Chief Complaint that "The Chief Complaint is: 'My left leg hurts.'" Under Review of Systems – Musculoskeletal - Casey relates Harris' report of "weakness in her legs and they give out randomly." She "[w]ould like to know why and also wants a cane to keep her from falling." She notes she "[h]as chronic low back pain." *Id.* Under Physical Findings Casey indicates under Musculoskeletal System" "General/bilateral: Normal movement of all extremities." *Id.* The limited statements in this record makes clear that Casey did not diagnose a condition and determine that a cane was needed from the representations that Harris' left leg was "hurting" or her legs being "weak" or "giving out." In fact, the physical findings were noted to be unremarkable. We find that the suggestion that the record reflects that a "medical decision was made by the treating source" that a cane was required overstates the case. The ALJ did not err in his finding that she used the cane sometimes but did not at others, she began using it recently, and it appeared to be used only for balance and because she complained of her leg "going out." DN 15-2, PageID #88. As her gait was not antalgic and it appeared she did not require a cane consistently, the ALJ did not find Harris' allegation of the need for a cane to be persuasive. *Id.*

Harris complains that because the ALJ found some suggestion that she did not need a cane consistently that he necessarily found that she needed a cane at all. Again, we find that Harris has taken liberties with the language. Harris has failed to identify any evidence in the record that the necessity of a cane was any more than necessity based upon Harris' own preference. We reject Harris' challenge to the ALJ's findings regarding use of a cane and objection to the Magistrate Judge's evaluation of those findings.

B. Cubital Tunnel Syndrome

With regard to Harris' severe impairment of Cubital Tunnel Syndrome and ALJ Collins' limitation of her to frequent rather than constant handling and fingering in the workplace, the Magistrate Judge recited the ALJ's findings:

> [T]he ALJ's discussion included specific findings that Harris had nonexertional limitations related to her cubital tunnel syndrome with citations to medical evidence related to the same. The ALJ also noted that she had very little treatment for the impairment; it is not improper for an ALJ to consider the type of treatment sought by a claimant in evaluating a complaint of disabling pain and symptoms. *See* 20 C.F.R. § 416.929(c)(3)(iv)-(vi).

DN 23, p. 11, PageID #1885. Contrary to the assertion of Harris, the ALJ did consider her activities of daily living, noting that she receives help from her children cleaning the house and washing dishes. She is able to prepare simple meals and use a crock pot. DN 15-2, PageID #87.

Harris presents nothing new in her objections. The ALJ did not ignore Harris' self-report of limitation due to her impairments. Indeed, the ALJ did not find persuasive either the initial medical consultant's finding that she was capable of medium work and the current state agency consultant's finding that her physical impairments are not severe. Instead, he found Harris' "allegations and contentions regarding the nature and severity of the impairment-related symptoms and functional limitations partially consistent with the evidence." DN 15-2, PageID #92. Harris offers nothing

to contradict this determination. She simply takes issue with the ALJ's decision. This objection is without merit.

C. Syncope

Recognizing that "she has had episodes of syncope" but noting that "her work up was generally unremarkable," the ALJ recited the re-evaluation for neurocardiogenic syncope in early 2019, and was ultimately referred to psychiatry for evaluation for polypharmacy or pseudoseizures, but there was no further documented treatment. DN 15-2, PageID #89. Again, in finding the ALJ's finding to be based upon substantial evidence and to accord with the regulations, he noted that "an ALJ is permitted to consider a claimant's treatment or lack thereof in assessing complaints of disabling pain or symptoms. *See* 20 C.F.R § 416.929(c)(3)(iv)-(vi); *Strong*, 88 F. App'x at 846. In rejecting the opinion of the physical CE, the ALJ also noted that Harris would need postural and environmental limitations to avoid 'putting her at risk due to seizures.'" DN 23, p. 14, PageID #1888.

The ALJ also noted that prior to the current application, the consultative examiner found no physical functional limitation in regard to syncope. He noted no functional limitations except for possible neuropathy. DN 15-2, PageID #89. The ALJ did not find this opinion persuasive. *Id.* He determined that "the current evidence reflects the claimant's obesity, asthma, degenerative disc disease, and arthralgia would reasonably preclude greater than light work. Further, her physical impairments would necessitate postural and environmental limitations due to avoid exacerbating her asthma causing pain or putting her at risk due to seizures. Since the diagnosis of her cubital tunnel, she would also need manipulative limitations as outlined in the residual functional capacity." *Id.*

The Magistrate Judge aptly noted that Harris has not cited evidence of any treatment provider assessing a limitation in her ability to perform basic work activities as a result of syncope. DN 23, p. 14., PageID #1888. Harris has not challenged this finding, but merely reiterates her former argument.

D. Opinion Evidence

Noting that the ALJ found the medical opinion evidence consistent with her activities of daily living and supportive of the conclusion that Harris could perform unskilled, low stress work, the Magistrate Judge determined that the ALJ's analysis evidenced a consideration of the record as a whole, not merely selected portions to support his RFC finding, as Harris contends.

In response to Harris' criticism that the ALJ inadequately explained his statement that consultative examiner Miller's report was a "bit equivocal," the Magistrate Judge indicated that the ALJ paraphrased extensively from his examination including his Medical Source Statement at the end of the report that Harris "*may* struggle with the stress and pressure found in a typical workday" and she "*may* struggle with moving about and manipulating objects due to her pain." DN 15-9, PageID #779. The ALJ found this examiner's opinion to be persuasive in limiting Harris to unskilled, low stress work in addition to determining that her prior consultative examination, performed in the year prior to her application was consistent with her activities of daily living and was also persuasive in limiting Harris to unskilled work. DN 15-2, PageID #90. The ALJ discussed but did not find persuasive an older consultative examination which he determined was too remote in time and "rather vague as to actual limits." *Id.*

The Magistrate Judge noted that the new regulations for evaluating medical opinions are applicable to Harris' case and required ALJ Collins to evaluate the persuasiveness of medical

-10-

opinions by reference to supportability, consistency, relationship with the claimant, specialization, and other factors. 20 CFR 416.920c(a) and (c). The regulations find the two most important factors to be supportability and consistency, and the ALJ was required to show how he considered these factors for a medical source's opinions. However, the regulations recognize that it is not feasible for the ALJ to articulate in each decision how he considered all of the factors. 20 CFR 416.920c(b)(1)-(2).

Against this backdrop, the Magistrate Judge found that the ALJ's references to examiners Weeks, Bachara and Miller's reports and the conclusions he reached as to each constituted a sufficient statement of his reasoning. Not satisfied with the result, Harris suggests that greater articulation was required as to the relevance of examiner Bachara's report rendered a year prior to her application and the statement that examiner Miller's evaluation was a "bit equivocal." Harris has not shown that contradictory evidence in the record nor has she shown that greater specificity in the ALJ's findings was required. Harris has failed to identify error in the Magistrate Judge's conclusion that there was no failure to follow agency rules and regulations in ALJ Collins' rendering of his RFC determination.

### E.  Mental Impairments

The Magistrate Judge recited in detail the substantial evidence in the record supporting the ALJ's determination that Harris had the residual functional capacity to perform "unskilled work with social limitations." DN 18, p. 28, PageID #1892. Particularly, ALJ Collins found Harris could "perform simple, routine, repetitive tasks with minimal variation in job duties day to day;" she could be "subject to few if any workplace changes;" she should "have no fast-paced production requirements;" she could "perform tasks over two hour segments in an eight-hour work day; she

could "have occasional contact with supervisors and workers;" and she could "have no contact with the general public." DN 23, p. 17, PageID #1891 citing page 20 of the Administrative Record. The Magistrate Judge cited Harris' own testimony, her diagnoses and treatment notes, and considered opinion evidence in determining her RFC. The Magistrate Judge's report evidences that the ALJ conducted an extensive review of the record as a whole in reaching his conclusions.

Harris contends that her medical history shows "ebbs and flows" of symptoms with medication changes, DN 17, PageID #1837, a point he reiterates in his objections to the Magistrate Judge's report. The Magistrate Judge illustrated in his report how the medication changes and her progress notes were considered by the ALJ along with her self-report of symptoms and limitations, but he ultimately rejected that her assertion that the persistence of symptoms rendered her disabled. As there is substantial evidence in the record, cited by the Magistrate Judge, to support ALJ Collins' determination and Harris has offered nothing more than a reiteration of rejected arguments in her objections, we find the Magistrate Judge's report sound and well-reasoned on this point.

F.  Combination of Impairments

Harris again argues that the ALJ failed to consider her impairments in combination in determining whether she was disabled. She offers nothing new. The Magistrate Judge addressed this assertion in his report noting that

> in his step three finding regarding the listings, the ALJ specifically noted that Harris did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. at 17.) The ALJ is required to consider the combined effect of a claimant's impairments in determining whether the claimant is disabled. 20 C.F.R. § 416.923 (2020). Discussing multiple impairments individually does not mean the ALJ failed to consider the combined effect of those impairments where the ALJ specifically referred to a "combination of impairments" in finding that the

-12-

>claimant did not meet the Listings. *Gooch v. Sec'y of Health & Hum. Servs.*, 833 F.2d 589, 592 (6th Cir. 1987), *cert. denied*, 484 U.S. 1075 (1988); *Loy v. Sec'y of Health & Hum. Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990).

DN 23, P. 22, PageID #1896. As the ALJ considered both exertional and non-exertional impairments and determined that they did not, individually or in combination, render her disabled, Harris' objection is without merit.

### G. Substantial Evidence

The Magistrate Judge found that the ALJ's narrative discussion of the evidence was sufficient to meet the requirements of SSR 96-8p and that his findings were supported by substantial evidence in the record. This Court agrees and finds no error in the Magistrate Judge's findings. Harris has not alleged specific error in the report beyond reiterating the arguments made in her Fact and Law Summary which were rejected by the Magistrate Judge. It is well settled with regard to this and other findings by the ALJ that "an administrative law judge's decision may be supported by substantial evidence 'even if that evidence could support a decision the other way.'" DN 27, pp. 12-13, PageID #1990-91, *quoting Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1233 (6th Cir. 1993). "This is so because there is a 'zone of choice' within which the Commissioner can act, without fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).

### H. Pain

In addressing Harris' claim of disabling pain, the Magistrate Judge discussed her argument that the ALJ failed to provide a narrative discussion of the factors relating to her pain. A claimant's statements concerning pain will not, taken alone, establish that he or she is disabled. There must be

medical signs and laboratory findings that show the existence of a medical impairment that could reasonably be expected to give rise to the pain and/or other symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a). Here, ALJ Collins found that there were medically determinable impairment that could reasonably be expected to produce Harris' symptoms, however her statements concerning the intensity and persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record, as explained.  20 CFR 416.929(c)(1).

In addressing Harris' argument that the ALJ's failed to contain an adequate narrative, he stated:

> Harris also argued that the ALJ erred in failing to include a narrative discussion of the factors set forth in 20 C.F.R. § 416.929(c)(3)(i)-(vii). (DN 17, at PageID # 1831.) Those factors relate to an ALJ's consideration of a claimant's pain symptoms and how that pain and those symptoms limit a claimant's capacity for work. 20 C.F.R. § 416.929(c)(1). The regulations cited by Harris require the ALJ to consider a number of factors as part of his analysis including a claimant's daily activities, effectiveness of any medication taken to relieve symptoms, and any side effects of that medication. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)) ("Relevant factors for the ALJ to consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions."). However, Harris cited no authority to support that the ALJ must individually discuss each factor. Instead, he is simply required to consider them. The discussion of the ALJ's treatment of Harris's physical and mental impairments above demonstrates that the ALJ did consider many of the factors even if he did not include a citation to the particular factor afterward. Accordingly, the undersigned finds Harris's argument to be without merit.

DN 23, p. 23, PageID #1987.

Rather than identifying a specific error in the Magistrate Judge's report in this regard, she postulates rhetorical questions such as "How is Harris to understand the ALJ's reasoning when citations to the evidence he relied on are not provided?"  She cites to no place in the ALJ's decision

evidencing this problem nor evidence calling into question that the findings are based upon substantial evidence in the record sufficiently elucidating the bases for the determination.

The court agrees with the Magistrate Judge that the ALJ's evaluation of the evidence concerning Harris' assertions of disabling pain was sufficient under the regulations. Harris has not identified record evidence that contradicts the ALJ's conclusion that her pain was not disabling. The claimant always bears the burden of proving lack of Residual Functional Capacity. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999). Harris has not identified error in the Magistrate Judge's determination and we find none.

### I. Substantial Evidence Generally

After an extensive review of the record and the ALJ's decision, the Magistrate Judge found:

> To the extent that anything in Harris's brief could be construed as a general challenge to the existence of substantial evidence to support the ALJ's RFC finding, the undersigned finds that the ALJ's RFC finding is supported by substantial evidence for the reasons set forth above. The ALJ cited to medical evidence of record, including the records regarding her use of a cane, cubital tunnel syndrome, syncope, and mental impairments discussed above, as well as Harris's own testimony in support of his conclusion. Further, he properly relied on the opinion evidence in the record when he deemed the same to be persuasive pursuant to the operative regulations. Where the ALJ relies on substantial evidence to support his conclusions, the role of the Court is not to second-guess those conclusions. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (noting that "[a]s long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess," and reversal is not "warranted even if substantial evidence would support the opposite conclusion").

DN 23, pp. 23-24, PageID #1897-98.

As Harris offers no specific challenge to this finding other than general disagreement, the objection is rejected.

J.  Step Five

The Magistrate Judge correctly noted that at Step Five the ALJ has the burden of demonstrating that there are a significant number of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and past work experience. 20 CFR 416.920(a)(4)(v). The Magistrate Judge explained that ALJ Collins made his Step Five findings in accordance with the applicable regulations. The ALJ took testimony concerning available jobs from the Vocational Expert, posing a hypothetical to the expert that mirrored the ALJ's finding of Harris' RFC. DN 23, p. 24, PageID #1898. The Vocational Expert testified that

> [A] limited range of work would be available for such an individual, including garment folders (Dictionary of Occupational Titles ("DOT") # 369.687-018), garment sorters (DOT # 361.687-014), and bakery workers (DOT # 524.687-022). (R. at 96-97.) The VE testified that there were 49,000 garment folder positions, 44,000 garment sorter positions, and 51,000 bakery worker positions available nationally. (*Id.* at 97.)

*Id.* In response to a question from the ALJ, the expert confirmed that her testimony had been consistent with the DOT with respect to this hypothetical. Harris did not cross-examine the Vocational Expert nor raised any question concerning these listings from the *Dictionary of Occupational Titles* (rev. 4th ed. 1991).

The Magistrate Judge explained that Harris' post-decision attempt to call the Vocational Examiner's findings into question is without merit, as the ALJ questioned the expert in accordance with SSR 00-4p whether her testimony was consistent with the DOT, the expert said that it was, and Harris failed to raise any potential conflicts. Without any objection, and with the appropriate confirmation, it was not error for the ALJ to rely on the Vocational Expert's testimony. The Magistrate Judge noted that

> Nothing in SSR 00–4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct." *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006). Thus, an "ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00–4p. This obligation falls to the plaintiff's counsel, who had the

> opportunity to cross-examine the VE and bring out any conflicts with the DOT. The fact that plaintiff's counsel did not do so is not grounds for relief." *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168-69 (6th Cir. 2009) (citations omitted); s*ee also Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009).

DN 23, P. 26, PageID #1900.

In any event, Harris' argument (which is merely reasserted in her objections) that two of the job listings involve moving mechanical parts or conveyors which she postulates is inconsistent with the RFC limitation of "no exposure to hazards" (DN 24, P. 13, PageID #1915) is without merit as the Magistrate Judge noted that there is no such problem with the listing of "garment sorter (DOT # 361.687-014), which the VE testified had 44,000 available positions nationally. (R. at 26, 97.) This constitutes sufficient evidence to support the ALJ's step five finding that there exists a significant number of jobs in the national economy that Harris could perform given her RFC, age, education, and past work experience." DN 23, p. 27, PageID #1901, citing *Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010) (finding that fewer than 1000 regional jobs can be a significant number of jobs to determine whether a claimant is disabled); *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (finding that 6,000 "jobs in the United States fits comfortably within what this court and others have deemed 'significant.'"); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 579 (6th Cir. 2009) (holding that 2,000 jobs was a significant number).

The Magistrate Judge concluded, and we agree, that having found the ALJ's RFC determination to be supported by substantial evidence, no further impairments were required to be included in the hypotheticals posed to the Vocational Expert. Harris' objection to the Step Five finding is rejected.

K. Issue not Addressed

Harris asserts that the Magistrate Judge failed to address an issue raised in her Fact and Law Summary concerning what she styles the "ALJ's rejection of the treating nurse practitioner's limitations on repetitive lifting, bending and twisting" (DN 24, p. 14, PageID #1916). Harris contends that the ALJ's "rejection" of the "limitation" was not supported by substantial evidence. She contends that the ALJ relied on anecdotal evidence that Harris saw "improvement" from chiropractic care and did not consider other evidence concerning her leg "giving out" and her difficulty walking. DN 24, p. 14, PageID #1916.

First, the Magistrate Judge found in painstaking detail that the ALJ's decision was supported by substantial evidence and a fulsome review of the record as a whole. To the extent that this objection suggests the weight of the evidence may be viewed other than as that of ALJ Collins, the Court has already discussed and accepted as sound the Magistrate Judge's review of the ALJ's analysis of the medical opinions, reports and treatment notes and other evidence including Harris' own statements and her activities of daily living, and this argument about this medical note does not alter the balance nor evidence reversible error.

Our own review of the nurse practitioner's note and the ALJ's treatment of it with reference to other pages in the record is informative.

First, this so called "limitation" makes no reference to the ability to perform work. Rather, the record indicates that Harris was in for an appointment on May 23, 2017 to "establish care" after having moved to Louisville from North Carolina. In providing her history, Harris reported that she had "chronic low back pain." The nurse practitioner advised that she "watch repetitive lifting, bending, and twisting to protect her back." Ex. 11F, p. 5. The ALJ cited this note, and also noted that the objective medical evidence showed only minimal to mild spondylosis (Ex. 26F, p.

196), left hip x-rays were negative (Ex. 26F, pp. 235-236). The ALJ also cites to a later visit note from the nurse practitioner. Ex. 11F, pp. 19-20. That visit occurred on June 26, 2017 at which time Harris reported to the nurse practitioner that she was going to a chiropractor once per week and "it is helping." Thus we reject Harris' contention that the ALJ rejection of this purported limitation was somehow in error, not based upon substantial evidence in the record, or evidences a failure to consider the record as a whole.

3. Conclusion

Review of the ALJ's decision and the Magistrate Judge's report satisfies the Court that the Magistrate Judge thoroughly considered and addressed all of Harris' arguments. We find no error in the Magistrate Judge's analysis and conclusions regarding these arguments. For these reasons, this Court concludes that Magistrate Judge's report was correct in concluding that ALJ Collins' decision is supported by substantial evidence. Harris' objections to the Magistrate Judge's report are without merit and will be overruled. The Magistrate Judge's report will be accepted and adopted in its entirety. A separate order and judgement will be entered this date in accordance with this opinion.

March 17, 2022

Charles R. Simpson III, Senior Judge
United States District Court

**IT IS SO ORDERED.**